**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION**

_____

SANDRA J. HUNTER, INDIVIDUALLY )
AND AS THE REPRESENTATIVE OF )
THE ESTATE OF LARRY J. HUNTER, )
                           )    CASE NO.:
                Plaintiff, )
                           )
       v. )
                           )    **JURY TRIAL DEMANDED**
ASTRAZENECA PHARMACEUTICALS )
LP; ASTRAZENECA LP, and PFIZER )
INC., )
                Defendants. )
_____

## COMPLAINT

Plaintiff, Sandra J. Hunter, for her Complaint alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for personal injuries and economic damages suffered by Plaintiff

Sandra J. Hunter ("Plaintiff")  and Decedent Larry J. Hunter ("Decedent") as  a  direct  and

proximate  result  of  the  Defendants' negligent  and  wrongful  conduct  in  connection   with

the  design,  development, manufacture, testing,  packaging,  promoting,  marketing, distribution,

labeling and/or sale of the proton pump inhibiting  drug  ("PPI") known  as  Nexium

(esomeprazole  magnesium)  and/or  other   Nexium-branded products with the same active

ingredient (herein collectively referred to as "Nexium").

2.      During the period in which Nexium has been sold in the United States, Defendants

have had notice of serious adverse health outcomes through case reports, clinical studies and

post-market surveillance. Specifically, Defendants had received numerous case reports of kidney

injuries in patients that had ingested Nexium and other PPIs by as early as 2004.

3.      Despite being on notice as to the excessive risks of kidney injuries related to the use of Nexium, Defendants took no action to inform Decedent or Decedent's physicians of this known risk. Rather, Defendants continued to represent that Nexium did not pose any risks of kidney injuries.

4.      By omitting, concealing, and inadequately providing critical safety information regarding the use of Nexium in order to induce its purchase and use, Defendants engaged in and continue to engage in conduct likely to mislead consumers, including Plaintiff and Decedent, resulting in the Decedent developing kidney injuries.

<u>**PARTIES**</u>

<u>**Plaintiff and Decedent, use of Nexium and Resulting Harm**</u>

5.      At all times referenced herein, Plaintiff and Decedent are and were citizens of the Commonwealth of Pennsylvania.

6.      Decedent was born on October 5, 1948.

7.      Decedent was prescribed Nexium on numerous occasions, including but not limited to, March 1, 2006 through March 12, 2016. Decedent ingested Nexium as prescribed by his doctor.

8.      Decedent read and followed the directions regarding the use of Nexium and would not have used Nexium had he been properly appraised of the risks associated with the use of Nexium.

9.      Decedent was diagnosed with chronic kidney disease on or about December 1, 2014 while taking Nexium as prescribed.

10.      Additionally, Decedent was diagnosed with Acute Kidney Injury on or about

September 1, 2015 while taking  Nexium  as prescribed.

**Defendants**

AstraZeneca Pharmaceuticals LP

11.     Defendant AstraZeneca Pharmaceuticals LP is, and at all times relevant to this action was, a Delaware corporation with its corporate headquarters in Wilmington, Delaware.

12.     At all times relevant hereto, Defendant AstraZeneca Pharmaceuticals LP was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Nexium products.

13.     Upon information and belief, at all relevant times, Defendant AstraZeneca Pharmaceuticals LP was present and doing business in Plaintiff's and Decedent's state of residency.

14.     At all relevant times, Defendant AstraZeneca Pharmaceuticals LP transacted, solicited, and conducted business throughout the United States, including in Plaintiff's and Decedent's state of residency, and derived substantial revenue from such business.

15.     At all times relevant hereto, Defendant AstraZeneca Pharmaceuticals LP expected or should have expected that its acts would have consequences within the United States, including in Plaintiff's and Decedent's state of residency.

16.     Defendant AstraZeneca Pharmaceuticals LP is the holder of approved New Drug Applications ("NDAs") for the following forms of Nexium:

     a.     Delayed-Release Capsule Pellets (20 mg and 40 mg), with NDA # 021153, approved on 2/20/2001;

     b.     Delayed-Release Oral Suspension Packets (2.5MG, 5MG, 20MG, 40MG), with NDA # 021957, approved on 10/20/2006;

  c.  Delayed-Release Oral Suspension Packets (10MG), with NDA number 022101, approved on 02/27/2008; and

  d.  Injection (20MG VIAL, 40MG VIAL), with NDA number 022101, approved on 03/31/2005.

AstraZeneca LP

17. At all times relevant hereto, Defendant AstraZeneca LP was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Nexium products.

18. Defendant AstraZeneca LP is, and at all times relevant to this action was, a Delaware corporation with its corporate headquarters in Wilmington, Delaware.

19. Upon information and belief, at all relevant times, Defendant AstraZeneca LP was present and doing business throughout the United States, including in Plaintiff's and Decedent's state of residency.

20. At all relevant times, Defendant AstraZeneca LP transacted, solicited, and conducted business throughout the United States, including in Plaintiff's and Decedent's state of residency, and derived substantial revenue from such business.

21. At all times relevant hereto, Defendant AstraZeneca LP expected or should have expected that its acts would have consequences within the United States, including in Plaintiff's and Decedent's state of residency.

22. Defendant AstraZeneca LP is the holder of an approved NDA (NDA #204655) for Nexium 24HR Delayer-Release Capsule (22.3 mg) approved on March 28, 2014.

AstraZeneca Pharmaceuticals LP & AstraZeneca LP's Unity of Interest

23. Upon information and belief, at all relevant times, each of the Defendants

and their directors and officers acted within the scope of their authority.  During the relevant times, Defendants possessed a unity of interest between themselves and exercised control over their respective subsidiaries and affiliates.

24.     Moreover, each Defendant was the agent and employee of each other, and in doing the things alleged was acting within the course and scope of such agency and employment and with each other Defendant's actual and implied permission, consent, authorization, and approval. As such, each Defendant is individually, as well as jointly and severally, liable to Plaintiff for Plaintiff's and Decedent's injuries, losses and damages.

Pfizer Inc.

25.     Defendant Pfizer Inc. is, and at all times relevant to this action was, a Delaware corporation with its corporate headquarters in New York, New York.

26.      At all times relevant hereto, Defendant Pfizer Inc. was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling NEXIUM products.

27.     Upon information and belief, at all relevant times, Defendant Pfizer Inc. was present and doing business in Plaintiff's and Decedent's state of residency.

28.     At all relevant times, Defendant Pfizer Inc. transacted, solicited, and conducted business in Plaintiff's and Decedent's state of residency and derived substantial revenue from such business.

29.     At all times relevant hereto, Defendant Pfizer Inc. expected or should have expected that its acts would have consequences within the United States, and Plaintiff's and Decedent's state of residency in particular.

30.     Defendant Pfizer Inc. acquired global over-the-counter rights to NEXIUM

products from AstraZeneca in August 2012 and made NEXIUM 24HR available for purchase in the United States on or about May 27, 2014.

31.     Defendant Pfizer Inc. is also the holder of an approved NDA for Nexium 24HR Delayed-Release Tablets (20 mg), with NDA # 207920, approved on November 23, 2015.

32.     Defendants AstraZeneca LP, AstraZeneca Pharmaceuticals LP and Pfizer Inc. shall herein be collectively referred to as "Defendants."

## JURISDICTION AND VENUE

33.      This Court has subject  matter jurisdiction pursuant to 28 U.S.C.  §1332(a)(1) because this case is a civil action where the matter in controversy exceeds the sum or value of $150,000, exclusive of interest and costs, and is between citizens of different States.

34.     Venue is properly set in this District pursuant to 28 U.S.C. §1391(b) because Defendants transact business within this judicial district. Likewise, a substantial part of the events giving rise to the claim occurred within this judicial district.

35.     Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over Defendants, because Defendants are present in this District, such that requiring an appearance does not offend traditional notions of fair play and  substantial justice. Further, Defendants have maintained registered agents in this District.

36.     This court has personal jurisdiction over Defendants pursuant to and consistent with the Constitutional requirements of Due Process in that Defendants, acting through their agents or apparent agents, committed one or more of the following:

a.     The transaction of any business within the state;

b.      The making of any contract within the state;

c.      The commission of a tortious act within this state; and

d.      The ownership, use, or possession of any real estate situated within this state.

37.      Requiring Defendants to litigate these claims in this District does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution. On information and belief, Defendants' Nexium products are sold at hundreds of local and national pharmacies, including, but not limited to Wal-Mart, Target, CVS, and Walgreens throughout this District.

38.      On information and belief, Defendants avail themselves of numerous advertising and promotional materials regarding their defective Nexium products specifically intended to reach consumers throughout the United States, including, but not limited to, advertisements in this District on local television programs, advertisements on local radio broadcasts, advertisements on billboards in this District and advertisements in print publications delivered to consumers in this District.

39.      Defendants regularly conduct or solicit business and derive substantial revenue from goods used or consumed in, *inter alia*, this District.

40.      Upon information and belief, at all relevant times, Defendants were present and doing business in this District.

41.      At all relevant times, Defendants transacted, solicited, and conducted business in this District and derived substantial revenue from such business.

42.      At all times relevant hereto, Defendants expected or should have expected that its acts would have consequences within the United States, including in this District.

43.     At all relevant times, Defendants placed Nexium products ingested by Decedent into the stream of interstate commerce.

44.     At all relevant times, Defendants expected or should have expected that their acts and omissions would have consequences within the United States, including in this District.

## FACTUAL BACKGROUND

### Proton Pump Inhibitors Generally

45.     Proton pump inhibitors ("PPI") are one of the most commonly prescribed medications in the United States to treat conditions such as:

      a.     Gastroesophageal reflux disease (GERD)
      b.     Dyspepsia
      c.     Acid peptic disease
      d.     Zollinger-Ellison syndrome
      e.     Acid reflux, and
      f.     Peptic or stomach ulcers.

46.     In 2013, more than 15 million Americans used prescription PPIs, costing more than $10 billion. Of these prescriptions, however, it has been estimated that between 25% and 70% of them have no appropriate indication.

47.     AstraZeneca sold Nexium with National Drug Code (NDC) numbers 0186-5020, 0186-5022, 0186-5040, 0186-5042, 0186-40100186-4020, and 0186-4040.

48.     Nexium is AstraZeneca's largest-selling drug and, in the world market, the third largest selling drug overall. In 2005, AstraZeneca's sales of Nexium exceeded $5.7 billion dollars.  In 2008, Nexium sales exceeded $5.2 billion dollars.

49.     Pfizer Inc. sold NEXIUM 24HR with NDC numbers 0573-2450-14, 0573-2450-15, 0573-2450-17, 0573-2450-28, 0573-2450-42, 0573-2450-43, 0573-2450-44, 0573-2450-56, 0573-2451-14, and 0573-2451-42.

50.     Nexium (esomeprazole magnesium) is a PPI that works by inhibiting the secretion of stomach acid. It shuts down acid production of the active acid pumps in the stomach, reducing hydrochloric acid in the stomach. The drug binds with the proton pump which inhibits the ability of the gastric parietal cell to secrete gastric acid.

**Dangers Associated with PPIs**

51.     Even if used as directed, Defendants failed to adequately warn against the negative effects and risks associated with this product including, but not necessarily limited to, long term usage and the cumulative effects of long term usage.

52.     During the period in which Nexium has been sold in the United States, hundreds of reports of injury have been submitted to the FDA in association with ingestion of Nexium and other PPIs. Defendants have had notice of serious adverse health outcomes through case reports, clinical studies and post-market surveillance. Specifically, Defendants have received numerous case reports of several types of kidney and related injuries in patients that had ingested Nexium, including but not limited to:

   a.     Acute Interstitial Nephritis (AIN),
   b.     Chronic Kidney Disease (CKD),
   c.     Renal/Kidney Failure,
   d.     Acute Kidney Injury (AKI), and
   e.     Clostridium difficile.

53.     These reports of numerous injuries put Defendants on notice as to the excessive risks of injuries related to the use of Nexium. However, Defendants took no action to inform Plaintiff or Plaintiff's physicians of this known risk. Instead, Defendants continued to represent that Nexium did not pose any risks of kidney injuries.

**Increased Risk of Acute Interstitial Nephritis (AIN) with PPIs**

54.     Acute Interstitial Nephritis (AIN) is the inflammation of the tubes and tissues of

the kidneys. The most common symptoms are fatigue, nausea and weakness. AIN-related symptoms can begin as early as one week following PPI ingestion.

55.     The risk of AIN among PPI users was first raised in 1992. Five years later, an additional study raised concerns. By 2011, the World Health organization adverse drug reaction report included nearly 500 cases of AIN.

56.     Between 2004 and 2007, at least three additional studies confirmed AIN related to PPI usage.  More recent studies indicate that those using PPIs such as Nexium are at a three times greater risk than the general population to suffer AIN.

57.     On or about October 30, 2014, the FDA notified Defendants that the FDA determined that PPIs (and all forms for Nexium, specifically) pose additional risks not previously disclosed.  *See* FDA Letter, dated December 19, 2014, to Laura Garcia-Davenport, Director of Regulatory Affairs at AstraZeneca Pharmaceuticals ("We also refer to our letter dated October 30, 2014, notifying you, under Section 505(o)(4) of the FDCA, of new safety information that we believe should be included in the labeling for Nexium."), available at http://www.accessdata.fda.gov/drugsatfda_docs/appletter/2014/021153Orig1s050,021957Orig1s 017,022101Orig1s014ltr.pdf.

58.     In December 2014, the labeling for PPIs was updated to include a warning about Acute Interstitial Nephritis (AIN). *See* December 2014 revised label, available at http://www.fda.gov/Safety/MedWatch/SafetyInformation/ucm290945.htm.

59.     Various medical studies and journals support the fact that there is an association between PPIs, including Nexium, and AIN.  *See*, *e.g.*, Blank M-L, Parkin L, Paul C, et al., *A nationwide nested case-control study indicates an increased risk of acute interstitial nephritis with proton pump inhibitor use*, Kidney Int'l (Published online Mar. 19, 2014); 86:837–44;

available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4184187/. *See also Proton Pump*

*Inhibitors: When is enough, enough?*, Best Practice Journal, Issue 61 (June 2014), available at

http://www.bpac.org.nz/BPJ/2014/June/ppi.aspx, updated in *Proton Pump Inhibitors and the risk*

*of acute kidney injury*, Best Practice Journal, Issue 76 (July 2016), available at

http://www.bpac.org.nz/BPJ/2016/July/update.aspx.

60.     Even the current warning of AIN is far from complete, lacking the necessary force

to give patients and treating physicians the proper information needed to make an informed

decision about whether to start a drug regimen with such potential dire consequences.

61.     If left untreated, AIN can lead to Chronic Kidney Disease (CKD) and kidney

failure.

**Association between Chronic Kidney Disease (CKD) and PPIs**

62.     CKD is the gradual loss of kidney function. Kidneys filter wastes and excess

fluids from the blood, which are then excreted.  When chronic kidney disease reaches an

advanced stage, dangerous levels of fluid, electrolytes and wastes can build up in the body.

63.     In the early stages of CKD, patients may have few signs or symptoms. CKD may

not become apparent until kidney function is significantly impaired.

64.     Treatment for CKD focuses on slowing the progression of the kidney damage,

usually by attempting to control the underlying cause. CKD can progress to end-stage

kidney failure, which is fatal without artificial filtering, dialysis or a kidney transplant. Early

treatment is often key to avoiding the most negative outcomes.

65.     CKD is associated with a substantially increased risk of death and cardiovascular

events.

66.     Studies have shown the *long term* use of PPIs was independently associated

with a 20% to 50% higher risk of CKD, after adjusting for several potential confounding variables, including demographics, socioeconomic status, clinical measurements, prevalent comorbidities, and concomitant use of medications.

67.     In at least one study, the use of PPIs for *any period of time* was shown to increase the risk of CKD by 10%.

68.     As a whole, patients with renal disease are nearly twice as likely to have been exposed to PPIs compared to those without renal disease.

69.     Various medical studies support the fact that there is an association between PPIs, including Nexium, and CKD. *See*, *e.g.*, *JAMA Intern Med*. 2016; 176(2): pp. 238-246, "Proton Pump Inhibitor Use and the Risk of Chronic Kidney Disease," Published online January 11, 2016, Corrected on February 29, 2016.

70.     Currently, Nexium lacks any warning of CKD.

**<u>Acute Kidney Injury (AKI) Dangers Associated with PPIs</u>**

71.     Studies indicate that patients taking PPIs, such as Nexium, are at greater than a 2.5 times greater risk than the general population to suffer AKI.

72.     Studies also indicate that those who develop AIN are at a significant risk of developing AKI even though there may not be obvious case kidney dysfunction.

73.     Various medical studies support the fact that there is an association between PPIs, including Nexium, and AKI. *See*, *e.g.*, Klepser DG, Collier DS, Cochran GL. *Proton pump inhibitors and acute kidney injury: a nested case–control study*, BMC Nephrol 2013; 14:150; available at http://bmcnephrol.biomedcentral.com/articles/10.1186/1471-2369-14-150; Antoniou T, Macdonald EM, Hollands S, et al. *Proton pump inhibitors and the risk of acute kidney injury in older patients: a population-based cohort study*. CMAJ 2015;3: E166–71; available at

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4571830/.

74.    Currently, Nexium lacks any warning of AKI.

**Availability of Safer Alternatives to PPIs**

75.    Despite the fact that Nexium and other PPIs lead to an increased risk of the injuries outlined herein, numerous safer alternatives are available.

76.    Such safer alternative treatments include but are not limited to:

    a.    the use of over-the-counter calcium carbonate remedies tablets, such as Maalox and Tums, that have been available since the 1930s, and/or

    b.    the use of histamine H2-receptor antagonists (also known as H2 blockers) that were developed in the late 1960s. H2 blockers act to prevent the production of stomach acid, and work more quickly than PPI. Examples of H2 blockers are Zantac, Pepcid, and Tagamet.

77.    Even though these safer alternatives at all relevant times existed, the sale of PPIs such as Nexium skyrocketed at the same time that the safer alternatives, namely the H2 blockers, plummeted.

78.    This is true despite the fact that higher kidney injury risks are specific to PPI medications. The use of H2 receptor antagonists, which are prescribed for the same indication as PPIs, is not associated with such renal injuries.

**Allegations Common to All Causes of Action**

79.    Defendants knew or should have known about the correlation between the use of Nexium and the significantly increased risk of AIN, CKD, AKI, and renal impairment. Yet Defendants failed to adequately warn against these negative effects and risks associated with Nexium.

80.     In omitting, concealing, and inadequately providing critical safety information regarding the use of Nexium to Decedent and Decedent's doctors in order to induce its purchase, prescription and use, Defendants engaged in and  continue to engage in conduct likely to mislead  consumers.  This conduct is fraudulent, unfair, and unlawful.

81.     Despite clear knowledge that Nexium causes a significantly increased risk of AIN, CKD, AKI, and renal impairment,  Defendants continue to market and sell Nexium without warning  consumers or healthcare providers of these significant risks.

## TOLLING OF THE STATUTE OF LIMITATIONS

82.     Defendants, at all relevant times, knew or should have known of the problems and  defects with Nexium products, and the falsity and misleading nature of Defendants' statements,  representations and warranties with respect to Nexium products. Defendants concealed and failed to notify Decedent and the public of such defects.

83.      Any applicable statute of limitation has therefore been tolled by Defendants' knowledge, active concealment and denial of the facts alleged herein, which behavior is ongoing.

## CASE- SPECIFIC INFORMATION

84.     Upon information and belief, on approximately March 1, 2006, Dr. Robert Swansiger discussed prescribing Nexium to Decedent.  Dr. Swansiger discussed the risks and benefits of Nexium.  Because Defendants did not disclose the true risks of acute and chronic kidney injuries associated with the use of Nexium to Dr. Swansiger, nor did Defendants disclose the true risks of acute and chronic kidney injuries in the information given to Decedent, it was impossible for Dr. Swansiger to adequately discuss the true risks and benefits of Nexium with Decedent.  Consequently, it was impossible for Decedent to learn of the true risks associated with Nexium.

14

85.     Decedent, after consultation with Dr. Swansiger, began using Nexium on or about March 1, 2006.   The Nexium used by Decedent remained in substantially the same condition between when it left Defendants' control and used by Decedent.  Dr. Swansiger would not have prescribed Nexium to Decedent if Dr. Swansiger knew of the true risks associated with the use of Nexium.  In other words, Dr. Swansiger would not have prescribed Nexium to Decedent if he knew the true risks associated with the use of Nexium.

86.     Decedent would not have elected to use Nexium if he knew of the true risks associated with the use of Nexium.  In other words, Decedent would not have elected to use Nexium if he knew the true risk of acute and chronic kidney injuries associated with the use of Nexium.

87.     Upon information and belief, on or about December 1, 2014, Decedent suffered chronic kidney disease and on or about September 1, 2015, Decedent suffered Acute Kidney Injury and was hospitalized.  Decedent suffered CKD and AKI because Nexium was negligently and defectively designed.  Defendants knew that Nexium was negligently and defectively designed when it left Defendants' control, and Defendants knew that it caused CKD and AKI at a higher rate than other similar medications on the market.  Defendants did not disclose these facts to Dr. Swansiger or Decedent.

88.     Through no fault of his own, and no fault of his health care providers, on or about December 1, 2014, Decedent suffered chronic kidney disease and on or about September 1, 2015, Decedent suffered an Acute Kidney Injury.  The CKD and AKI caused pain and suffering, financial loss and caused permanent injury to Decedent and Plaintiff.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

89.     Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

90.     Defendants owed Plaintiff and Decedent legal duties in connection with its development, manufacture, and distribution of Nexium. Defendants breached those duties, proximately causing Decedent's injuries. Specifically, Defendants failed to meet their duty to use reasonable care in the testing, creating, designing, manufacturing, labeling, packaging, marketing, selling, and warning of Nexium. Defendants are liable for acts and/or omissions amounting to negligence, gross negligence and/or malice including, but not limited to the following:

> a.     Failure to adequately warn Decedent and Decedent's physicians of the known or reasonably foreseeable danger that Decedent would suffer a serious injury or death by ingesting Nexium;

> b.     Failure to adequately warn Decedent and Decedent's physicians of the known or reasonably foreseeable danger that Decedent would suffer a serious injury or death by ingesting Nexium in unsafe doses;

> c.     Failure to use reasonable care in testing and inspecting Nexium so as to ascertain whether or not it was safe for the purpose for which it was designed, manufactured and sold;

> d.     Failure to use reasonable care in implementing and/or utilizing a reasonably safe design in the manufacture of Nexium;

> e.     Failure to use reasonable care in the process of manufacturing Nexium in a

16

reasonably safe condition for the use for which it was intended;

    f.     Failure to use reasonable care in the manner and method of warning Decedent and Decedent's physicians as to the danger and risks of using Nexium in unsafe doses; and

    g.    Such further acts and/or omissions that may be proven at trial.

91.    The above-described acts and/or omissions of Defendants were a direct and proximate cause of the severe, permanent and disabling injuries and resulting damages to Decedent and Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for actual and compensatory damages; for punitive or exemplary damages; for costs herein incurred; and for such other and further relief as this Court deems just and proper.

## COUNT II
## NEGLIGENT MISREPRESENTATION

92.    Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

93.    Defendants failed to communicate to Decedent and/or the general public that the ingestion of Nexium could cause serious injuries after it became aware of such risks. Instead, Defendants represented in its marketing that Nexium was safe and effective.

94.    Plaintiff brings this cause of action against Defendants under the theory of negligent misrepresentation for the following reasons:

    a.    Defendants, individually, and through their agents, representatives, distributors and/or employees, negligently misrepresented material facts about Nexium in that it made such misrepresentations when it knew or reasonably should have known of the falsity of such

17

misrepresentations. Alternatively, Defendants made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

b.      The above misrepresentations were made to Decedent as well as the general public;

c.      Decedent and Decedent's healthcare providers justifiably relied on Defendants' misrepresentations; and

d.      Consequently, Decedent ingested Nexium to Decedent's detriment. Defendants' negligent misrepresentations proximately caused Decedent's and Plaintiff's injuries and monetary losses.

WHEREFORE, Plaintiff demands judgment against Defendants for actual and compensatory damages; for punitive or exemplary damages; for costs herein incurred; and for such other and further relief as this Court deems just and proper.

## COUNT III
## <u>FRAUDULENT MISREPRESENTATION</u>

95.      Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

96.      Defendants are engaged in the business of selling Nexium. By their advertising, labels, or other information provided, Defendants made misrepresentations of material fact concerning the character or quality of Nexium to Decedent and the public.

97.      Decedent justifiably relied on Defendants' misrepresentations in purchasing Nexium. Decedent and Plaintiff have suffered physical harm proximately caused by Defendants' misrepresentations regarding the character and/or quality of Nexium.

WHEREFORE, Plaintiff demands judgment against Defendants for actual and

18

compensatory damages; for punitive or exemplary damages; for costs herein incurred; and for such other and further relief as this Court deems just and proper.

## COUNT IV
## EXPRESS WARRANTY

98.     Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

99.     Defendants are merchants and/or sellers of Nexium. Defendants sold Nexium to consumers, including Decedent, for the ordinary purpose for which such drugs are used by consumers. Defendants made representations to Decedent about the quality or characteristics of Nexium by affirmation of fact, promise and/or description. The representations by Defendants became part of the basis of the bargain between Defendants and Decedent. Nexium did not comport with the representations made by Defendants in that it was not safe for the use for which it was marketed. This breach of duty by Defendants was a proximate cause of the injuries and monetary loss suffered by Decedent and Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for actual and compensatory damages; for punitive or exemplary damages; for costs herein incurred; and for such other and further relief as this Court deems just and proper.

## COUNT V
## IMPLIED WARRANTY

100.     Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

## WARRANTY OF MERCHANTABILITY

101.     Defendants are merchants and/or sellers of Nexium. Decedent purchased Nexium from Defendants and used Nexium for the ordinary purpose for which it is used by

consumers. At the time it was purchased by Decedent, Nexium was not fit for the ordinary

purpose for which such drugs are used. Nexium was not fit for the ordinary purpose for which

such drugs are used because it was not manufactured, designed or marketed in a manner to

safely accomplish its purpose. Defendants' breach of their implied warranty of

merchantability caused Decedent's and Plaintiff's injuries and monetary losses.

## WARRANTY OF FITNESS

102.    Defendants sold Nexium to Decedent with the knowledge that Decedent

was purchasing Nexium for a particular purpose.  Defendants knew, or should have known, that

Decedent was relying on Defendants' skill or judgment to select goods fit for Decedent's

purpose.

103.    Defendants delivered goods that were unfit for Decedent's particular purpose

and thus breached their implied warranty of fitness. Defendants' failure to select and sell a

product which was reasonably safe for its intended use proximately caused Plaintiff's and

Decedent's injuries and monetary losses.

WHEREFORE, Plaintiff demands judgment against Defendants for actual and

compensatory damages; for punitive or exemplary damages; for costs herein incurred; and for

such other and further relief as this Court deems just and proper.

## COUNT VI
## FRAUD

104.    Plaintiff incorporates by this reference the allegations set forth in the

paragraphs above as if fully set forth herein.

105.    Defendants made material representations that were false and that were

either known to be false when made or were asserted without knowledge of their truth.

Defendants had in their possession adverse drug event reports, drug studies, and other documentation about Nexium and yet made the following misrepresentations:

a.  Misrepresentations regarding the frequency of Nexium-related adverse event reports or occurrences in the Nexium label, package insert or PDR label;

b.  Misrepresentations as to the existence, occurrence and frequency of occurrences, severity and extent of the overall risks of Nexium;

c.  Misrepresentations as to the efficacy of Nexium;

d.  Misrepresentations as to the number of adverse events and deaths reported with the use of Nexium; and

e.  Misrepresentations regarding the nature, seriousness, and severity of adverse events reported with the use of Nexium.

106.   Defendants intended that these misrepresentations be relied upon by physicians, including Decedent's physicians, healthcare providers and consumers. Decedent did rely upon the misrepresentations that caused Decedent's and Plaintiff's injuries.

107.   Defendants' misrepresentations were the proximate and/or producing cause of Decedent's and Plaintiff's injuries.

WHEREFORE, Plaintiff demands judgment against Defendants for actual and compensatory damages; for punitive or exemplary damages; for costs herein incurred; and for such other and further relief as this Court deems just and proper.

## COUNT VII
## LOSS OF CONSORTIUM

108.   Plaintiff incorporate by reference all other paragraphs of this complaint as if fully set forth, and further alleges as follows:

109.    Plaintiff Sandra J. Hunter was the wife of Decedent.

110.    As a result of the medical conditions developed by her husband and the medical treatment and hospitalizations that he endured, Plaintiff:

    a.    lost a substantial measure of her husband's household services;

    b.    lost, and will continue to lose in the future, a substantial measure of her husband's consortium; and

    c.    suffered the loss of services, loss of financial support, loss of society including loss of companionship, care, assistance, and attention, and mental anguish entitling her to compensatory damages and attorney's fees.

111.    As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff Sandra J. Hunter suffered injuries.

WHEREFORE, Plaintiff respectfully requests an award of compensatory damages, in addition to all costs, interest and fees, including attorneys' fees, to which she is entitled under law and such other relief as this Honorable Court deems appropriate.

## COUNT VIII
## SURVIVAL

112.    Plaintiff incorporates by reference here each of the allegations set forth in this Complaint as though fully set forth herein and further allege as follows.

113.    Defendants' conduct was reckless and willful, wanton and outrageous disregard for the interests, safety and rights of others, including Decedent.

114.    As a result of Defendants' unlawful conduct and reckless disregard for others as averred above, Decedent suffered actual and substantial loss, for which he possessed rights of action at the time of his death and for which his estate is entitled to recover, as follows:

    (a)    damages for severe pain, suffering and distress;

    (b)    loss of earning power less personal maintenance expenses from the time of death through his estimated working lifespan;

22

(c)     punitive damages; and

(d)     any and all other damages recoverable under the applicable survival statutes.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which she is entitled under law and such other relief as this Honorable Court deems appropriate.

## PUNITIVE DAMAGES ALLEGATIONS

115.   Plaintiff incorporates by reference each of the allegations set forth in this Complaint as though set forth fully herein and further alleges as follows.

116.   The acts, conduct, and omissions of Defendants, as alleged throughout this Complaint were willful and malicious.  Defendants committed these acts with a conscious disregard for the rights of Decedent and other Nexium users and for the primary purpose of increasing Defendants' profits from the sale and distribution of Nexium.  Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

117.   Prior to the manufacturing, sale, and distribution of Nexium, Defendants knew that Nexium was in a defective condition as previously described herein and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries.  Further, Defendants, through their officers, directors, managers, and agents, knew that the medication presented a substantial and unreasonable risk of harm to the public, including Decedent and as such, Defendants unreasonably subjected consumers of said drugs to risk of injury or death from using Nexium.

118.   Despite its knowledge, Defendants, acting through their officers, directors and managing agents for the purpose of enhancing Defendants' profits, knowingly and deliberately

failed to remedy the known defects in Nexium and failed to warn the public, including

Decedent, of the extreme risk of injury occasioned by said defects inherent in Nexium.

Defendants and their agents, officers, and directors intentionally proceeded with the

manufacturing, sale, and distribution and marketing of Nexium knowing these actions would

expose persons to serious danger in order to advance Defendants' pecuniary interest and

monetary profits.

119.   Defendants' conduct was despicable and so contemptible that it would be looked

down upon and despised by ordinary decent people, and was carried on by Defendants with

willful and conscious disregard for the safety of Decedent, entitling Plaintiff to exemplary

damages.

WHEREFORE, Plaintiff respectfully requests an award of punitive damages, in addition

to all costs, interest and fees, including attorneys' fees, to which she is entitled under law and

such other relief as this Honorable Court deems appropriate.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment against all Defendants and award

additional relief as follows:

1.   Economic and non-economic damages, special damages and

general damages, including pain and suffering, in an amount to be

determined at trial;

2.   For compensatory damages for the acts complained of herein in an

amount to be determined by a jury;

3.   For disgorgement of profits for the acts complained of herein in an

amount to be determined by a jury;

4.        Punitive damages for the acts complained of herein in an amount to be determined by a jury;

5.        For an award of attorneys' fees and costs;

6.        For prejudgment interest;

7.        For the costs of suit;

8.        For post-judgment interest; and

9.        For such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial as to all claims and issues triable of right  by a jury.

Respectfully submitted,

Dated: November 30, 2016

/s/ *Dianne M. Nast*
NASTLAW LLC
Dianne M. Nast
Daniel N. Gallucci
Joanne E. Matusko
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania  19107
T:  (215) 923-9300
F:  (215) 923-9302
dnast@nastlaw.com
dgallucci@nastlaw.com
jmatusko@nastlaw.com

***Attorneys for Plaintiff***